UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

Nathaniel L. Mullens, Jr.,

      Debtor

Chapter 13
Case No. 25-10063

**ORDER DENYING MOTION TO COMPEL TURNOVER**
**AND REQUEST FOR SANCTIONS**

On July 15, 2025, the debtor filed a Motion to Compel Turnover and Request for Sanctions [Dkt. No. 32]. For reasons set forth below, the motion is denied.

Certain factual allegations from the motion can be roughly summarized as follows. The debtor's counsel has lost possession or control of $1,798 in funds from the retainer payment made by the debtor's sister to counsel via PayPal. This loss occurred because, nearly four months after the payment was made, the sister disputed the transaction, and then "Pay[P]al seized the funds." The debtor's counsel has been unsuccessful so far in his attempts to navigate PayPal's dispute resolution process. So, now the debtor is attempting to seek relief here instead.

Among other requests, the debtor wants the Court to order his sister and PayPal to turn over $1,798 to the debtor's counsel. The debtor contends that: (1) the $1,798 qualified as property of the bankruptcy estate; (2) the sister and PayPal, without court authorization, "exercise[d] control" over that estate property; and (3) the sister's and PayPal's conduct constituted intentional violations of the automatic stay.

The debtor cites only "Bankruptcy Rule 9014 and 11 U.S.C. Section 362"—which broadly address "Contested Matters" and "Automatic [S]tay," respectively. The debtor cites no more specific law or other legal authority to support his contentions. Rather, a few legal terms

1

of art are simply stated in various conclusions. No supporting documentation was attached to the motion. Instead, the debtor summarizes, in a self-serving and selective fashion, various transactions and interactions for which actual documentation does (or should) exist within the debtor's or his counsel's control—that would likely carry more weight than a summary *and* would likely be critical toward meeting a burden of proof.[1]

Moreover, certain factual allegations seem to be inconsistent with the record in this case. The debtor alleges that "[p]repetition" he "agreed to rent a room to his sister at approximately $900.00 per month" for at least two months. He links that purported agreement to his sister's $1,798 payment to counsel in February 2025 followed by her allegedly later living with him from around April 1 to "the beginning of June" (a period that included the April 15, 2025 petition date). It was on June 10, he alleges, that his sister falsely told PayPal that she did not receive what she had purchased for the $1,798 that she had paid to counsel.

Although the purported agreement's terms were allegedly performed from about two months before through two months after the petition date, the debtor's disclosures in his bankruptcy schedules and statements, under penalty of perjury, offer no support for the narrative here. No executory contracts or leases were disclosed. The sister is not identified as a creditor or listed on the creditor mailing matrix. The disclosures about the $1,798 retainer payment merely identify the sister as the source of the funds. The only other reference to the sister

---

[1] Examples of such critical documentation might include: counsel's documentation showing the sister's understanding of her payment of the $1,798 to counsel; documentation of an alleged agreement between the debtor and his sister; and the complete written exchanges between counsel and PayPal on the matter.

2

appeared on the debtor's original schedule I, but that did not disclose any financial arrangement with her. And the reference was deleted from an "amended" version filed three months later.[2]

Ultimately, with the uneven factual allegations and scant legal analysis in the motion, the Court cannot find sufficient support for ordering the sister and PayPal to send $1,798, collectively, to the debtor's counsel. Nor can the Court find sufficient support for sanctioning the sister and PayPal, as is also requested. Thus, the motion is denied accordingly, without prejudice, and the August 21, 2025 hearing on the matter is canceled.

This brings the Court to a concern apart from the motion's unsupported nature: the debtor's counsel's seeming failure to appreciate his role and responsibility in the alleged loss of the $1,798 here. In the motion, the debtor suggests that the loss of funds is attributable, in part, to "Pay[P]al's remarkable failure to maintain practices and procedures designed to avoid violations of Title 11[.]" Yet, for nearly four months, counsel was holding the $1,798 in a digital wallet or account to which PayPal apparently had access. Thus, the Court suggests that the debtor's counsel may wish to reconsider his own practices and procedures in protecting funds held in trust. *See* State of Maine, Board of Overseers of the Bar, Pro. Ethics Comm'n, Formal Op. No. 226 (2024), https://www.mebaroverseers.org/attorney_services/opinion.html?id=12348299 (discussing limitations on and ethical issues associated with attorneys accepting payments via third-party

---

[2] The debtor's original and amended schedule I identify the debtor as a self-employed caregiver with over $2,000 in monthly income. The original schedule I revealed that, as of April 15, the debtor "expect[ed] an increase or decrease" in income within the next year because "debtor's sister will move in soon, debtor will earn additional money as caregiver." Nothing further about the sister was included. Moreover, although the motion alleges that the sister moved in around April 1, the April 15 schedule I indicates that she had not moved in yet. The amended schedule I disclosed higher income, eliminated all expectations about future increases or decreases, and made no reference to the sister. Perhaps the amended version was intended as a supplement. Or perhaps the sister was never expected to move in or never did so. Or perhaps there was another reason for deleting the prior reference to the sister.

payment apps).³  The Court further suggests that the debtor's counsel reconsider his efforts to seek reimbursement for his time spent tending to what appears to have been an entirely preventable issue.

Dated: August 18, 2025

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

---

³ The opinion cautions: "Some payment apps are specifically designed for lawyers . . .; others are not, such as: PayPal . . . . Each payment app creates risk regarding an attorney[']s duty to protect client funds and protect confidential client information." Further, discussing the requirements of safekeeping client property, the opinion cautions:

> Additionally, a lawyer must be aware of how apps handle disputes regarding payments made through the app. Some apps will, upon the filing of a dispute, automatically withdraw the entire payment and place it on hold while the dispute is pending. This withdrawal could adversely impact other client funds in the trust account, if the payment is made directly to that account, or cause an overdraft, especially if a portion of the disputed payment has already been withdrawn as earned fees. A lawyer should use caution in accepting payment of legal fees through an app that is not designed specifically for compliance with the professional rules. Fees and chargebacks should be paid by the lawyer unless the lawyer and client agree otherwise.

Formal Op. No. 226.